19-1811 and 19-2574. And given the times as they are, we'll leave it to counsel as you're comfortable wearing masks at table as you currently are, but for argument, if you're comfortable taking off your mask, you're welcome to do that. And we will start with Mr. O'Donnell. I would ask both counsel, since our time today is limited, you, of course, may address any issues that you'd like. But having conferred, our panel would find it most helpful for you to focus today on the April 25th discovery motion, the May 25th continuance, and the August eliminate motions. And, of course, whatever arguments you wish to make about the rehave issue. Yes, ma'am. My remarks would be regarding the motion eliminate, which, frankly, the 404B as well as the rule 609 are notices. They're not motions. They're notices. And the distinction basically is that a motion such as a motion to suppress has the ability of terminating the case. A severance motion has the ability of breaking the case apart. Let me ask you, what do you make of counsel's response to those motions? They did respond to those motions and they requested a hearing. So isn't that more akin to a motion than a notice? The time period between when the government filed its motion and the response should be counted against the government. For purposes of the Speedy Trial Act, when there's a response, my argument is that it stops the time period. It doesn't hold all the time period. It just stops the time period. Because there's been cases, I believe there was a case in which counsel didn't respond at all. And that period of time went against the government completely. And the court granted the motion to dismiss based off a speedy trial. So I think this court needs to address that as to when. Counsel, so others may look at it differently. But to my mind, the question is, is this really a pretrial motion? And if so, when's the hearing? And so, you know, the D.C. Circuit had this one case in Harris where it was expressly filed as a notice. The party calls it a notice, isn't seeking a hearing right away. Obviously, that's not going to toll it. But, you know, there's another case where the D.C. Circuit treated a 404 or 609 motion as a notice. Now, I wonder if that's right, that it's not really a motion. If I'm a prosecutor, I want to know ahead of trial, am I going to get this in or not? It's actually part of the trial prep and the plea negotiation. So why shouldn't we treat it? It's a bona fide, actually seeking a ruling. There's no argument here that this was just designed to confuse or get something off the clock. Why shouldn't we treat it as what it is on its face? Well, if I understand your question correctly, Your Honor, the – as I go back, there's – these are evidentiary issues. These are issues that do not have the ability, frankly, to terminate the case or change how the case goes. A motion to suppress does. A motion to suppress a statement does. A severance does. These particular – Well, wait a second. There are some severance motions to suppress that don't kill the case. Of course. They just narrow it down. But it's still a motion. That's right. But, you see, it has the ability in its nature where if you're successful in a motion to suppress evidence, it kills the case. Not always. Not necessarily. It may. But it certainly hurts the government's case. You're not going to argue that motions to suppress that don't kill a case are in a motion, are you? No, no. I'm not arguing that. I'm just saying that if the statements come in or they don't come in, they affect how broad the case is. The point I'm making is that there's a difference between a motion to suppress of a statement or physical evidence and a notice of an introduction of 404B or 609 evidence. It's a completely different animal. There certainly is in terms of the semantics. But I think, Judge Bevis, this question is going to the fact that having advance notice about what is going to come in at trial can affect preparation of witnesses ahead of time. What is said in opening statements? What's promised about who's going to testify and what they might say? So it can affect what actually happens at trial. Should we be making a distinction between those kinds of motions and some other type of filing that is properly treated as a notice? And if so, what's the distinction? Well, again, I think you've got to look at these particular evidentiary issues. First of all, let's take 404B. 404B is something that you need to decide, should be decided early in the game by the judge because it has the ability, obviously, of hurting the defendant tremendously at trial. 404B evidence, when it comes in, is normally devastating evidence. And from a defense attorney's perspective, you want your client to know this, okay, that it's devastating. And 609 evidence, or 609 pertaining to whether or not he chooses to testify, which, frankly, seldom happens, but it is a consideration that you need to go through, is also very important. And these should be made promptly. But they don't have the ability to basically terminate the case. So in your worldview, the only motions that are motions are motions that terminate the case? Well, I think it's very important as a distinction as far as the act is concerned. You take a look at the Supreme Court decision regarding Zettner. They talk in terms of how the Speedy Trial Act is to protect the defendant and the public so that the cases move and that they happen quickly, rather than have this actually be a situation where based off the government filing a notice. Well, a notice, in the criminal context, a notice that we're all familiar with was 21-851, right, an 851 notice. When you put in the defense a notice that you're going to double the mandatory or make it a life sentence, that's clearly a notice. It doesn't require a response. These were motions that were captioned motions, and the defense responds as the defendant's response in opposition to the government's motion. And, frankly, once that response happened, then the time period is told until there's a decision. Why should that matter? Under your theory, what's the significance of a response being filed if there's nothing else to do at that point until trial? Well, I think there's a case in which the court cited, I believe it was Van Smith, where the defense counsel didn't file any reply whatsoever, and the time told against the government because there wasn't any reply. So that's where I come with that. That's where I make that decision. So you're taking the D.C. Circuit's position, but let's talk about the First Circuit's position in Rojo Alvarez, right? I don't think you're arguing that this was filed for an improper purpose. No. The government actually wanted a ruling. It's a bona fide motion. Exactly. And the defendant responded to it as a bona fide motion. Exactly. Now, in Rojo Alvarez, what the court said is the court can take this under advisement and rule promptly, and the Federal Rules of Criminal Procedure Rule 12 encouraged the court to rule promptly on these. Or it can convert it into something else. It can say, I'm going to reserve decision until trial. Now, no question, you know, the First Circuit's position is if you reserve decision to trial at that point, we're not treating it as on the table as pretrial anymore. But why shouldn't we treat it as a pretrial motion, which it says it is, at least until the court says that? I think the ‑‑ I think, again, I go back to my point. I think that you need to look at these are issues that can be easily disposed of quickly, and to reserve these points until trial, in particular 404B, is unwise as far as being able to dispose of the case and letting the defendant know tactically what's coming in against them as far as trial is concerned. In trial prep, it defeats the whole purpose just to allow the court not to have any kind of guidance at the trial level as to when they have to make these decisions, okay? And if they don't make these decisions in a prompt manner, certainly I think you have to look at this as something where you can't disadvantage the defendant or the public by allowing this to go on. This is inappropriate. But what if it says here that trial court sets a hearing date? Well, okay, that's a different story. That's a different situation. Then you have a situation where you're going to have a determination. That's normally done, that a hearing date is set for these motions. And then it's normally something that's prompt after a response from defense counsel. And obviously during that period of time, there wouldn't be and all that time would be excludable from the time in which the response is filed and the hearing date. Okay, that would be my argument. But as a practical matter, what difference would that really make? I mean, let's suppose that an in limine motion is made at arraignment or soon thereafter, as the rules indicate it should be. At that point, with the court setting up this whole pretrial schedule, it includes a date for hearing shortly before the scheduled trial date, which may be months and months down the road that we'll be hearing to dispose of pretrial motions, including those in limine motions that were filed at the very outset. Would you say that because of the length of time that those shouldn't be treated as motions? Yes, because that's very unreasonable. So it's a motion and then it's not a motion? It's not a motion. Listen, when it comes to 404B and 609, those are notices. Those are evidentiary issues. What's your rule? Is your rule if the government files it, it's a notice? If the defendant files it, it's a motion? I don't understand what makes this different from some of those other things that can affect the course of the trial or can affect plea bargaining. I presume this could affect plea bargaining. I think respectfully, Your Honor, I think there's a big difference between a motion to suppress evidence, which has the ability of terminating the case, and a 404B or a 609. You've conceded that there are motions to suppress or other things that don't terminate a case, and yet you say those are motions, too. Of course, because sometimes you don't win these cases. You don't win the motions. But let's say you suppress one of three witnesses. Does that make it not a motion? It's still a motion. But it can't end the case. Because the rule says it's a motion. Well, the rule says this is a motion, too. I mean, Rule 12, you know. I don't think so, Your Honor. I don't think a 404B or a 609 is a motion. It's a notice as to the government's intent regarding evidence that's going to be produced. I don't think it qualifies at all as a motion. I think what happens is that once there's a response in a hearing data set, there's different rules that pertain as to the amount of time regarding the excludable time. But per se, 404B and 609 are notices, and they're not motions. What is the rule or statute on which you base the proposition that 404B and 609 are not motions, that they're not being filed under 12B4? Well, I think we have case law. I think the Harris case talks in terms of it being considered to be a notice and not a motion. And I think when you unpack what a 404B is and what a 609 is, you see that it's primarily evidentiary in nature as what the government intends to introduce, rather than, like I said, a motion to suppress or a severance motion, which has a completely different character and different context as to how it affects the case. But the statute tells us by its terms any pretrial motion. Why isn't this in the category of any? Good question. I don't think the initial intent of the Act deals with evidentiary issues. It deals with substantive motions that have an ability to terminate the case. A suppression motion is an evidentiary issue. What will be allowed and what will not be allowed at trial. So a defendant's statement may be suppressed, but the case moves forward. Yes, it could. And it could terminate it, too. Let me ask you about this May, the May 2016 hearing. Do you know what I'm referencing? I don't recall the dates. I recall the context. The hearing where Carlos Martir was dismissed as counsel and there was an evidentiary, there was a hearing and whether the time after that hearing was properly excluded. I'll just rely on the brief and what was briefed on that particular point. Okay. I'm sorry, I can't give a particular response in any kind of detail. To help focus you on that, because I have some questions there as well, that was an open-ended continuance. Okay. And a couple of questions. Should we be thinking of that as simply an extension of that February continuance or something that is freestanding and needs to be freestanding? And to the extent that we're looking for guidance to Rivera and Reese that said, there doesn't need to be magic words if you have appropriate findings. Why don't we have on the record of that May hearing a sufficient balancing of the interests with the trial judge warning the defendant that replacement of counsel was going to lead to additional delay, and then talking with both parties about the need for additional discovery and whoever was going to be appointed as new counsel to get up to speed. Why doesn't that put us under the umbrella of Rivera and Reese to say, even if there aren't magic words, that there's a sufficient balancing to conclude that it's a valid continuance for purposes of the Speedy Trial Act? Your Honor, again, I'll just rely on my briefs as far as that's concerned. It makes sense that it would be consistent in view of the fact that counsel was being replaced. That would be appropriate under those circumstances. Mr. Mortier, in his colloquy with the judge, said that he was actually asking for this continuance in the interest of justice. Right. Would that be enough? I think so. It would be? I think so. All right. Under those circumstances. Counsel, I don't believe you reserved time, but you have a couple minutes left. I reserved three minutes. Oh, I'm sorry. All right. Very good. Can we have that down? Yeah. Excellent. Thank you. I'm sorry. The gentleman told me to make that known in the beginning, and I forgot. I apologize. Then you have two more minutes to go and three minutes for rebuttal time. Okay. Thank you very much. Okay. We'll hear from the government. Good morning, Your Honors. May it please the Court. I'd like to address first the motions in the lemonade argument, if Your Honors will oblige. I think the government's position, and I think it's supported by the weight of the authority, and more elementally by the definition of what a motion is, is that motions aren't circumscribed by what may be styled as a motion. I think that's an unwise way to look at a motion. It's certainly not, and there's no authority protecting the position that a motion only is triggered once there's a response to a motion. That being because sometimes you have consented to motions. You've got a stipulated order that is presented to the judge, and the judge has to decide whether to grant that. Now, it's not opposed, but a motion asks, and Melendez says this, a motion asks a court to adjudicate a matter, and to give a result to the applicant, whether to deny or to grant it, and that's what a motion is. And I think that's why there's five circuits that have supported that motions in the lemonade are motions, even, and I think two spoke specifically on this, one, the Fifth Circuit, even when that motion won't be decided until a hearing during trial or immediately before trial. Why doesn't that just open this up to gamesmanship? We have 12B4 says that these types of motions should be filed at arraignment or as soon as practical thereafter. So what prevents an eliminating motion from being filed at the very outset, and say it's unopposed, and the court doesn't rule on it, or simply says I'm going to hold that off until trial? Does that mean that from that point forward, indefinitely, that all time is told? I think a couple of responses, if you will, Your Honor. First of all, I think the answer to that is yes, and I think Henderson makes that clear, that the district court is not, an appellate court for that matter, is not to look at the reasonable delay of the motion. That's what the law says. So I think on the first level, response would be this is explicitly what the statute says. It says any pretrial motion, time is excludable, I'm paraphrasing a bit, from the time the motion is filed until a hearing or other prompt decision. Is it really a pretrial motion if it's envisioning that it will be resolved at trial? Maybe it's a trial motion. Well, I think that's up to the discretion, Your Honor. I've seen it in both ways, that there is a pretrial motion, 404B or 609, or sometimes adjudicated before trial, sometimes at trial. So you don't have a quarrel with the First Circuit's rule in Rojo Alvarez that if the judge decides I'm going to take this under advisement, wait until trial, at that point it's no longer a pretrial motion. I would take a position with that, Your Honor. I think going back to a more elemental definition, it's a motion. Talking about the Act, it's a motion under the Act. It's a motion, but is it still a pretrial motion if the judge says I'm waiting until trial? Well, I would say in that circumstance, Your Honor, based on the explicit language, then maybe that isn't. But I'll sort of tether it back to the case before this Court. That's not what happened here. This case involved a pretrial motion which was substantive. It's in the record, I think at the appendix around page 200. It involved eight applications on the 404B side, and then I think three or four 609 applications for prior felony convictions for impeachment. Two things. I do think in the D.C. Circuit, really what was before Harris and Dan Smith were 609. I don't want to delve too much into the distinction, but I think there is a distinction. 609 is for impeachment. It doesn't really impact the government's case in chief. It's not something that the government will really invest a lot of time in before the trial. 404B, and particularly in this case where there were eight applications to the Court, and then shortly before the first trial, the Court granted leave to the government to supplement and add two more applications. So we had a really substantive motion asking for adjudication on ten matters that really impacted the government's case in chief. Are you suggesting that we should get into the business of evaluating how substantive a motion is to determine whether it meets the definition of a pretrial motion for the Speedy Trial Act? No, Your Honor, and I apologize if that was the interpretation. I'm just trying to establish that this was different from what Judge Bibas was saying, where a motion was, if I can paraphrase His Honor, was sort of delayed or tabled until the trial. This was a motion that was filed in August, two months before. Now, I know ultimately the trial didn't happen until June, but at this time there was an open-ended continuance that had trials scheduled for November 30th. So when the government filed it on August 16th, it was really a short, relatively speaking for a case of this magnitude, a short period before the trial. The government expected that this would be adjudicated either before the trial or at the trial two months away. Now, Henderson also stands for the proposition that not every motion is the same, right? There are some motions where a motion's filed, there's a hearing, and maybe the judge takes it under advisement and has another 30 days. There are also motions that Henderson speaks about which, for whatever reason, maybe they're more complicated, require post-filing and post-response briefing, supplemental hearings. And that's precisely what these motions and limine were. They were argued in front of the district court by both parties on three separate hearings. They were argued on November 7th, they were argued on January 11th, 2017, and then shortly before the trial, on May 15th, 2017, and as I mentioned a moment ago, then there was additional supplemental briefing. Now, ultimately they weren't decided because the defendant, you know, threatened his attorney's family, judge found manifest necessity, had to grant a mistrial, and so they weren't ultimately argued until the October trial, but there is no argument between the parties as to speedy trial violation or alleged violation after that June trial. So in fairness, a period from August until September is not unreasonable, Your Honor, and there's plenty of cases even in this circuit where there's much longer periods. Are you suggesting that the fact that it's going to be heard and considered by the trial court in the context of trial evidence means that that's akin to a hearing that's coming up, that we should think about it in those terms rather than it being more appropriately treated as a trial motion instead of a pretrial motion? Your Honor, and then referring back to Judge Bevis's hypothetical, if the court really is to say that this will only be decided at trial or this will be decided at trial and we're going to table it now, I think that would create potentially an issue. I still think it's a pretrial motion. I still don't think we should get wed too much in the actual how a motion is styled, but I think there could be an issue, but again, that wasn't what happened here. So do we just need to accept that as a practical matter, it will be a sort of retrospective identification of whether a particular eliminating motion qualifies as a pretrial motion under the Act, that it depends on what the district court says and does,  I would say in response to that, not what the adversary does and not really respectfully for what the district court does. I think if a motion is filed under the definition of a motion and it asks the court for an adjudication and if there isn't an exceptional sort of circumstance where the judge says definitively, we're not going to deal with this to the trial, then it is a pretrial motion. I know it's broad, Your Honor, but I think that's what the statute reads, and I think it's a congressional issue. If the statute is too broad and it's an invitation for games playing, as Your Honor earlier kind of referred to, an extreme example would be if an attorney for the government wants to just blow the Speedy Trial Act out of the water so the day after arraignment files a motion and it gets sat on for three years. Again, certainly not the case here. Number one, I think that's an issue for the legislature to fix that. Number two, based on the weight of authority of circuits that have found what I believe the position of the government is, that any pretrial motion includes motions in limine, it's clearly not happening. This isn't a problem that's affecting circuits across the country with U.S. assistant U.S. attorneys or defense counsel trying to artificially, you know, divest some of their speedy trial rights. Why should we think of this as relegated to the legislature when the Supreme Court made its own effort in Henderson to say there are limits? I mean, yes, if there's a hearing, then we're not going to look at how reasonable the length of time is until the hearing is scheduled, but it said we have to read these two subsections of the act together so that once all information is in front of the district court to allow it to make an informed decision, at that point it's under advisement and you've got 30 days running. It would be under advisement, Your Honor. I would respectfully respond when there isn't a hearing or when the hearing has already occurred. Again, going back to this case, this issue wasn't under advisement to the district court, you know, really until it was granted at a hearing during the trial. So it really differentiates motions in Lemonade that were treated like this one from another type of motion where maybe there is, as I mentioned earlier, an application, a response, and a hearing, and then the judge has all that it needs to make an informed decision. But here within less than 30 days from the filing of the motion, the court came back and set a date for a response to be filed. Doesn't that make clear that the court took that motion initially under advisement, treating it as a motion, and with the determination that it made, then requested that there be a response with a hearing that then followed? Wasn't the court's action there something that tells us that the court was looking at it itself as a motion? I respectfully disagree with that, Your Honor. Motions typically do have responses, and that doesn't nullify the need for a hearing. I don't think there was ever a notion from the district court, and certainly not on the record, that there wasn't going to be a hearing about this. And once we're cabined, you know, in the universe where there's a hearing, it removes that subpart D under H1 of the Speedy Trial Act. It removes it from other prompt disposition, which then, you know, invokes the 30-day under advisement. I don't think these motions in Lemonet were ever under advisement. I don't think the district court, you know, gave any impression of that. I don't think that ever was the case here until they were ultimately decided. What do you make of the May hearing, the May 2016 hearing? Sure. And, Your Honor, Judge Restrepo, you said earlier, was this a continuation of the first open-ended continuance? Maybe. But I don't think it really matters. That one, there was an order. It was a little more formalistic. I think, respectfully, by the time May came around, the comportment of the defendant kind of started to take this case off the wheels a little bit, and the district court, I'm not one giving out awards, I think really conducted itself admirably throughout a very difficult underlying prosecution with a very obstreperous defendant. Those are the district court's words in a denial of a post-trial motion. But I think that's important. I'm not trying to dirty the defendant. Just to let the court know that the government's position here is that, you know, not every case is the same. And in this case, you had a very difficult defendant who was firing attorney after attorney, having at one point himself appointed pro se, and then two months later, you know, asking for the same lawyer who he said he couldn't get along with to be reappointed only three months later after that to threaten that lawyer. Counsel. Yes. There's no question the district court handled difficult circumstances admirably. No question that the district court could have excluded time under the Speedy Trial Act based on that. I think the question here is whether the district court in fact did that. The closest it comes is at JA 146. All right. Well, what I think I'll do is I'm going to appoint counsel and then schedule a future status hearing so that we can all get together and I, Mr. Adams can, and his counsel can tell us what they've done so far, what they need to do, what they want to schedule in the future, and possibly pick a trial date at that point in time. All right? Because there still are, as I see it, some outstanding discovery issues. Right? Does that language exclude time under the Speedy Trial Act? Yes, Your Honor. I think it does. Explain how you parse it to do that because it doesn't talk about evidence of justice. It doesn't cite the act. It doesn't do a weighing explicitly. How do you read it? So in response to that, Your Honor, first, I think that language, and although it's not as clear as it could have been, that language does abide by the Constitution, I think, under Rivera construction. And Rivera said very clearly that elevating form over substance is not important in this context. And I think Rivera acknowledged and understood that you have sometimes these type of litigations where it's very complicated, there's a lot of messiness, and sometimes it's not as clean as it needs to be. But it doesn't need to be exacting the language. I think that's very clear. I think as long as the record reflects that the district court balanced the interest of the public and the defendant in a speedy trial against, and here I would submit the most overarching reason that's clearly apparent from what Judge Bevis just read was the Sixth Amendment right to counsel. And you have to put this in context. At that May 25th hearing, this defendant had just caused his attorney to be fired and was asking for an appointment of another attorney. There were also significant discovery issues going on related to the government's obligation to provide this defendant some discovery that the government wanted a protective order for. So before the new attorney had been appointed, the court had to balance those, you know, Sixth Amendment right against discovery that the defendant was entitled to or that only his attorney could have. So when you're given that, Your Honor, and I would also say, you know, Latin talks and a lot of the progeny from Latin talk about the totality of the circumstances. And in response to, you know, is the language perfect? Did it invoke the rule or cite language from the rule? No, it didn't. But again, Rivera construction says that you don't have to as long as the justification is on the record at the time the continuance is granted, and that's before an alleged 70-day period is elapsed, it satisfies the rule. Well, here we don't even have an order of continuance, neither reflected in what was said at the hearing or on the docket. Should we take so functional an approach as even without not magic words of the act, but not even an order that's entered? We should read that into what happened to allow time to exclude it. I apologize. I think so, Your Honor. And I think if you look at LATINI, I think the direct relationship between LATINI and the next open-ended continuance in November, which Your Honors haven't questioned about, but even in this May is really on point. In LATINI, there were two continuances. The first was for six months. The second one was characterized by the Court as a continuance or an extension of that continuance. And there, there was even less set on the record than what Judge Bevis read moments  ago. But are you arguing this is an extension or that this is a freestanding continuance? I think either way, Your Honor, that it abides by. I think the May was its own. I think it was its own. But I don't, I think that's a difference without a distinction. I think what... Can we bake in Mortier's request that the continuance be granted in the interest of justice? I'm sorry, Your Honor? In our analysis, can we bake in the defense counsel's request that the continuance be granted or his motion be granted in the interest of justice? Yes, I think you can, Your Honor. Because, again, under a totality of the circumstances, that first continuance was granted. And there, it was certainly more formalistic. There was an ends of justice order entered after. Now, the continuance had already been entered on the record by the Court. But there was an ends of justice continuance in written form that adopted Carlos Mortier's motion. And it had all of the reasons. But, again, just because that one followed more of a script than the two subsequent ones, I think Rivera Construction is clear that the Court shouldn't be tethered to some magical language. And in response to what you had said, Judge Crowley... The difficulty with that, before you go on to her point, is that at JA130, when Mortier says interest of justice, he's talking about the interest of justice that new counsel should be appointed. So you have to imply that new counsel being appointed is going to require a continuance. But he's actually focusing on the appointment of counsel at that point. I think he was focusing on the appointment of counsel. And, again, I would hearken back to, is there any more important reason to grant an ends of justice continuance than a Sixth Amendment right? I mean, that's among the sacrosanct reasons to give someone more time. And two members of this Court, in Randolph versus Department of Corrections here in Pennsylvania, recently, it was sort of a speedy trial case, but Judges Restrepo and Judge Krause found how important that Sixth Amendment right was, that the circumstances there, of course, a defendant wasn't being given an extra week to prepare or a couple hours to prepare for trial. That was unreasonable, certainly. But I think it just goes to show that all of these open-ended continuances, all of them, were governed by this defendant's need to either have a new attorney or to have himself represent himself and be prepared for trial. So I think that's an incredibly important reason, and I think all of these reflect that the Court balanced that reason against the right to a speedy trial. You referred to a form or checklist. Is there a form that you know of that's used in the district courts? I know that there are his, in some, I forget exactly what they call it, but some of the decisions that I cited to in our most recent supplemental filing talk about a district form. Has the government seen that? I have not, Your Honor. And I certainly, I mean, I was counsel of record throughout this trial, so I certainly hadn't seen it years ago when this litigation was ensuing. It seems like something like that, if it were used consistently, could preempt a I can't disagree with that, Your Honor. Again, there are, there is certainly a scenario where I wouldn't be here arguing speedy trial act if it had been a little more buttoned up by a form. But again, that is not what the law requires. What happened on this record abided by what the law requires, specifically when it relates to Latney and Rivera construction. And I think that while there is no prejudice component to a speedy trial act violation, Latney does say that the court should and can and should look at what are the causes for this delay? And if you look at all of the delays, every single cause without exception is because of the defendant's conduct. And Latney also talks about courts have to be careful when they're looking at this. Certainly the continuance has to abide by what the law requires, but courts have to be careful about inviting this kind of conduct, games playing, where a defendant, you know, asks for lawyer after lawyer, files all kinds of motions, many of which are frivolous, and then, you know, in retrospect, at the time of appeal, points back and says, oh, judge didn't say the magic words here. That's an invitation for a really unfortunate situation, and I think that's unfortunately what happened in this case. Counsel, your time has expired, but to the extent we have additional questions, we'll proceed. And I have one for you on the April pro se discovery motion, where there's disagreement between you and your colleague on the other side of the aisle as to whether we look to the ultimate denial of that motion or to the filing of a protective order. My question is, what was left outstanding from the pro se discovery motion after the filing of the first protective order? And, Your Honor, a couple things in response to that. Number one, I'll say this is a case that I think falls firmly within that Henderson advisement to the court that not all motions are really, you know, linear, where you have a motion, an argument, and a decision. Sometimes there's supplemental briefings, supplemental questions, and that's precisely what happened here. That motion was filed. The defendant was still represented, but sort of a hybrid motion that he filed on April 25th. There was a May 4th response. It was discussed at the May 25th hearing. Then there was a little supplemental briefing where the court asked for a motion for protective order, and as Your Honor mentioned moments ago, it was entered on June 21st. Now, you have to look at, again, totality of the circumstances, what was happening there. Jim Polyak, second attorney, was appointed I think about a week or two before that June 21st. Thrust into the situation where he had a protective order and he had a defendant who was demanding discovery for the defendant to have himself. The government on the other side was opposing that, and that required further discussion. There were further discussions. You can call them hearings with the court as to how Mr. Polyak would respond to that stipulated protective order and discharge his duties to his defendant. There was another order on July 30th or July 13th directing Mr. Polyak to file an agreement with the government that he should turn over to his client, and then ultimately another July 20th order instructing Mr. Polyak to turn over those documents that he had proffered to the court on agreement of the government that he should turn over to his client. And then ultimately on August 18th, it was denied. So a long-winded answer to your question, Your Honor, but I don't think that motion was disposed of by the June 21st protective order. I think there was supplemental briefing and argument and consideration by the court as to how they would move forward and how this attorney would maintain his responsibility to his client to prepare for a trial. What about the second protective order? I'm sorry, Your Honor. I'm not sure. I'm not aware of a second protective order. Well, there were two protective orders that were filed here, right? One was around July 11th and one was on the 20th. Okay. I understand. I think those, I'm, I was misunderstanding. I'm treating these all as one protective order, one motion for discovery that resulted in a protective order that was amended and clarified by the court. So, again, the position of the government as we briefed, Your Honor, is that beginning on April 25th and then ending on August 18th, all of that related to one pro se motion for discovery within which one of the orders that dealt with that motion was a stipulated protective order. When we have the August order denying the pro se motion, saying in the footnote that it really was, that it had already been addressed largely by the protective orders that had been entered and to the extent that it was a pro se motion was now moot. How does that, again, looking at this functionally, how does that suggest there's anything that's continuing up until that point that should exclude time? Well, I would say in the sequence of events, Your Honor, the last order was entered by the court on or about July 20th. And so when the court referred to most of this or all of this was disposed of by the stipulated protective order, that could end the period on July 20th. But the court still gets then under the Speedy Trial Act explicitly 30 days to take something under advisement. So that would extend to August 18th when the court ultimately denied the motion. Additional questions? Okay. Thank you, Your Honor. Thank you. Thank you. Mr. Adama? As I reiterated previously regarding the issues pertaining to the fact that it's our position that the 609 and the 404B were notices and not motions. I think the argument by the government doesn't necessarily dispel those particular positions that were made. And I just want to reiterate that. And if there's any additional questions that the court may have, I'd be happy to entertain them. We gave the government the opportunity to address the pro se motions from April. Right. Do you wish to address those or rest on your briefs? I'll rest on my brief on that, please. Okay. Thank you. All right. We thank both counsel for a very helpful briefing and argument today. And this Court will take the matter under advisement. Thank you. Thank you very much. Did it get hot? There were a lot of people in here. That is very nice. All right. Have a good seat and all. Thank you. Thank you. Thank you.